CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September, 10, 2025
LAURA A. AUSTIN, CLERK
BY:s/ KELLY BROWN
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **Case No. 7:14-cr-10** |
| v. | ) | |
| | ) | **Hon. Robert S. Ballou** |
| WILBERT JAROD HARDY. | ) | **United States District Judge** |

### MEMORANDUM OPINION

Wilbert Jarod Hardy qualified as a career offender when the court sentenced him in 2014 to 180 months for the distribution of controlled substances. If sentenced today, however, Hardy would no longer qualify as a career offender. Hardy seeks compassionate release under 18 U.S.C § 3582(c)(1)(A), claiming that the disparity between the sentence imposed in 2014 and the sentence others similarly situated would receive today constitutes an extraordinary and compelling reason that warrants relief. Dkt. 54, 62.[1] The government opposes Hardy's request for relief, arguing that despite the fact that Hardy's guideline sentence would be lower today, he has not shown an extraordinary and compelling reason for compassionate release and that the 18 U.S.C. § 3553(a) factors do not support a sentence reduction. Dkt. 66.  Hardy's motion for compassionate release is **GRANTED**.

### I.    Background

In August 2014, Hardy pled guilty to cocaine distribution in violation of 21 U.S.C §§ 841(a)(1) and 841(b)(1)(C), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Dkt. 24. He was found responsible for 4.15 grams of cocaine. *See* PSR, Dkt. 31. He entered into a Plea Agreement under Fed. R. Crim. P. 11(c)(1)(C) in which Hardy and the

---

[1] Hardy originally filed his compassionate release motion *pro se;* the court appointed counsel to investigate his claim, who filed a supplemental motion for compassionate release on Hardy's behalf.

United States agreed "that 180 months of incarceration is an appropriate disposition of this case." The Court accepted the Plea Agreement and on November 7, 2014 imposed a 180-month sentence. Dkt. 24, 29. Hardy's presentence report designated him as a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2, based on two of his prior convictions, one for a "serious drug offense" selling cocaine, and the other for a "crime of violence" felony eluding police. Dkt. 31, ¶¶ 13, 21. The Court imposed the 180-month sentence as required under the Plea Agreement and Rule 11(c)(1)(C). The United States agrees that, if sentenced today, Hardy would no longer qualify as a career offender, because felony eluding is no longer considered a crime of violence.

Both the United States and Hardy have submitted supplemental briefing calculating Hardy's guideline range, if sentenced today. The United States calculates Hardy's guideline range today as 140 to 175 months, based on a total offense level of 29 and a criminal history category of V. Dkt. 76. Hardy calculates his guideline range as 121-151 months of incarceration, based on a total offense level of 29, and a criminal history category of IV, after applying Amendment 821. Dkt. 77. Alternatively, Hardy argues that the four-level enhancement under U.S.S.G. § 2K2.1 should not apply, resulting in an offense level of 25 and a guideline range of 84-105 months.

The following table shows the sentencing range originally calculated in the PSR and the guideline calculations by counsel for the government and Hardy.

| Description | PSR Calculation | Government Calculation | Defendant Calculation |
|---|---|---|---|
| Base Offense Level – 2K2.1(a)(1) | 26 | 22 | 22 |
| Specific Offense Characteristics – 2K2.1(b)(1)(A) – involved 3 firearms | +2 | +2 | +2 |
| Specific Offense Characteristics 2K2.1(b)(4)(B) – shotgun did not have serial number | +1 | +4 | 0 |
| Specific Offense Characteristics – 3K2.1(b)(6)(B) – gun involved in another felony offense | +4 | +4 | +4 |
| Adjusted Offense Level | 33 | 32 | 29 |
| Acceptance of Responsibility – 3E1.1(a) and (b) | -3 | -3 | -3 |
| Total Offense Level | 30 | 29 | 25 |
| Criminal History Category | VI | V | IV |
| Guideline Range | 168-210 | 140-175 | 85-105 |

Hardy objects to the application of the enhancement under § 2K2.1(b)(4) for possessing a shotgun without a serial number – a Stevens 311A shotgun. Hardy contends that this shotgun was manufactured prior to 1968 and thus has "no serial number" – instead of an obliterated serial number as required under the guideline enhancement. Hardy argues that not only should the enhancement not apply as a factual matter, but also the government has not met its obligation to produce evidence that the enhancement properly applies. But, even if the sentencing court improperly applied this enhancement when sentencing Hardy, fixing this type of error at this

time would require weighing evidence regarding the date of manufacture of the shotgun which is outside the scope of a motion for compassionate release. *See United States v. Ferguson,* 55 F.4th 262, 270 (4th Cir. 2022) (noting that because "§ 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as a motion for compassionate release, to sidestep § 2255's requirements"); s*ee also Dillon v. United States*, 560 U.S. 817, 831 (2010) (explaining that § 3582(c)(2) "does not authorize a resentencing" but instead "permits a sentence reduction within the narrow bounds established by the Commission"). Accordingly, I conclude that the enhancement under §2K2.1(b)(4) applies and Hardy's total offense level, after acceptance of responsibility, is 29.

While I will not change the four-level enhancement under U.S.S.G. § 2K2.1, I will apply Amendment 821 to calculate Hardy's sentence under the current guidelines. Hardy has a criminal history score of 8 and he committed his offense while under a criminal justice sentence. This increased his criminal history score to 10 (when calculated in 2014) and a Criminal History Category of V. Under Amendment 821, Hardy would receive only one additional criminal history point for committing the offense while under a criminal justice sentence, resulting in a criminal history score of 9 and a Criminal History Category of IV.[2] Accordingly, I find that Hardy's guideline range if sentenced today based upon a Total Offense Level of 29 and a Criminal History Category of IV would be 121-151 months imprisonment. It is against this

---

[2] Amendment 821 which reduces the criminal history points for committing the charged offense while under a criminal justice sentence is applied retroactively. This change will, therefore apply to the calculation of Hardy's criminal history category.

backdrop that I analyze whether extraordinary and compelling reasons exist to grant Hardy's compassionate release motion.

## II.    Compassionate Release

Compassionate release is an exception to the general rule that a district court may not modify a term of imprisonment once it has been imposed. 18 U.S.C. § 3582(c); *Ferguson*, 55 F.4th at 267–68; *United States v. Davis*, 99 F.4th 647 (4th Cir. 2024). The 2018 First Step Act allows prisoners to file motions for compassionate release, where previously only the Bureau of Prisons could do so. *See United States v. McCoy*, 981 F.3d 271, 276, 283 (4th Cir. 2020). Prior to filing a motion under 18 U.S.C. § 3582(c)(1)(A), a prisoner must exhaust his administrative remedies by requesting the BOP move for compassionate release and then waiting 30 days for the BOP to act. Here, Hardy requested compassionate release from the Warden on March 26, 2022, who did not respond within 30 days. Dkt. 54. The United States does not contest that Hardy exhausted his administrative remedies.

Courts follow a sequential inquiry to analyze a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *Davis*, 99 F.4th at 653–54. First, the court determines whether the prisoner has shown extraordinary and compelling reasons warranting a sentence reduction. *Id.*; *see also United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022). If that condition is met, the court considers any applicable 18 U.S.C. § 3553(a) sentencing factors. *Id.* The court must then "determine whether the requested reduction in sentence is consistent with "applicable policy statements issued by the Sentencing Commission" and whether the defendant is a danger to the safety of any other person or the community. *Id.*; 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

### A.  Extraordinary and Compelling Reasons for Sentence Reduction

Until recently, no applicable policy statements governed compassionate release motions filed by defendants. But, in May 2023, the Sentencing Commission amended U.S.S.G. § 1B1.13, defining extraordinary and compelling where (1) the defendant suffers from a terminal or serious medical condition; (2) the defendant is at least 65 years old, has deteriorating health, and has served the lesser of at least 10 years or 75 percent of his sentence; (3) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse, registered partner or parent becomes incapacitated and the defendant is the only available caregiver; (4) the defendant was a victim of physical or sexual abuse committed by an individual with custody or control over the defendant while he was incarcerated; (5) "other reasons" similar in gravity; or (6) the defendant has served at least 10 years of an "unusually long sentence" and a change in the law (other than an amendment to the Guidelines manual that has not been made retroactive) has produced a "gross disparity" between the sentence being served and the sentence likely to be imposed when defendant files his motion. *See* U.S.S.G. § 1B1.13.

### B.  Subsection (b)(6) Applies

Hardy asserts that subsection (b)(6) applies to his case, which requires that he show (1) a "gross disparity" between the sentence he is serving, and the sentence likely to be imposed when he filed his motion for compassionate release, and (2) that he has served ten years of his sentence.  The government argues that subsection (b)(6) is invalid and that it does not apply in Hardy' situation. I find that subsection (b)(6) is valid and applies to Hardy.

### (1)  The Sentencing Commission did not Exceed its Authority in Adopting Subsection (b)(6).

As a threshold matter, the government claims subsection (b)(6) is invalid because nonretroactive or intervening changes in law cannot be extraordinary or compelling, and thus subsection (b)(6) conflicts with § 3582(c)(1)(A) which conscribes the circumstances under which

a court may modify a term of imprisonment. However, the Sentencing Commission acted within the express authority of Congress directing that it promulgate a policy statement describing what to consider extraordinary and compelling reasons for sentence reduction under § 3582(c)(1)(A). *See* 28 USC § 994(t). In *Davis*, the Fourth Circuit maintained that a change in law can constitute an extraordinary and compelling reason for compassionate release, however, it did not directly grapple with whether the Sentencing Commission exceeded its authority in subsection (b)(6). 99 F.4th at 657. Still, the *Davis* court specifically considered the Sentencing Commission's 2023 amendments and remanded to the district court to "determine whether the requested reduction in sentence is consistent with 'applicable policy statements issued by the Sentencing Commission.'" *Davis*, 99 F.4th 647; 18 U.S.C. § 3582(c)(1)(A). I recognize that several circuits have found that the Sentencing Commission exceeded its authority in enacting subsection (b)(6), *see United States v. Bricker*, 135 F.4th 427, 430 (6th Cir. 2025) (on appeal) and *United States v. Black*, 131 F.4th 542, 543 (7th Cir. 2025) (on appeal), but the Fourth Circuit has not done so. To the contrary, the Fourth Circuit in *McCoy* held that non-retroactive changes in the law may warrant compassionate release. *McCoy*, 981 F.3d at 286 ("We think courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair."). Likewise, in *Davis* the Fourth Circuit, relied on *Concepcion v. United States*, 597 U.S. 481, (2022), to "further confirm[] that changes in law are fair game in compassionate release motions." 99 F.4th at 657.

Having determined that the Sentencing Commission did not exceed its authority in promulgating subsection (b)(6), I analyze whether subsection (b)(6) applies to Hardy.

(2) Hardy has served ten years of his sentence.

Subsection (b)(6) applies only to defendants who have served at least ten years of their

sentence. Hardy was arrested on March 17, 2014, sentenced on November 7, 2014 and has remained in continuous federal custody since his arrest. He has served ten years of his sentence.

    (3) <u>A change in law within the meaning of subsection (b)(6).</u>

    Following Hardy's sentencing in 2014, the Supreme Court in *Johnson v. United States* invalidated the residual clause in the definition of a "violent felony" under the Armed Career Criminal Act, after which the United States Sentencing Commission amended the sentencing guidelines to remove the career offender crime of violence residual clause. "The ACCA defines 'violent felony' in a manner substantively identical to the definition of a 'crime of violence' in § 4B1.2 [and] precedents evaluating the ACCA apply with equal force to U.S.S.G. § 4B1.2." *United States v. Jarmon*, 596 F.3d 228, 231 (4th Cir. 2010). Thus, because of a change in law following Hardy's conviction, his prior conviction in 2008 for felony evading police no longer qualifies as a crime of violence, and he would no longer be a career offender under the sentencing guidelines.

    Again, contrary to the government's claim that an "intervening development in sentencing law cannot serve as an 'extraordinary or compelling' reason for a sentence reduction" the Fourth Circuit stated in *Davis* that it could:[3]

> We now grapple with whether a change in law can constitute an extraordinary and compelling reason for compassionate release. *McCoy* said that it can.

---

[3] The United States also states that *Johnson,* 576 U.S. 591, does not qualify as a change in law under subsection (b)(6), because "an intervening judicial interpretation of a statute – even one that disagrees with earlier interpretations – is not new law." Dkt. 66 at 10 (cleaned up). However, while a defendant cannot challenge the validity of a conviction or sentence in a compassionate release motion, Hardy does not do that here. Hardy's motion does not attack the validity of his sentence, or claim a mistake at sentencing resulted in an overly long sentence; instead, he argues that a subsequent change in the law (*Johnson v. United States*) means that, his term of imprisonment today would be significantly shorter.

99 F.4th at 657. "Nonretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence." *Id.* at 658. Indeed, the *Davis* court held that the district court abused its discretion when it failed to consider Davis's argument that he no longer qualified as a career offender, and thus, if sentenced today, he faced a substantially shorter term of imprisonment. The Fourth Circuit instructed the district court to "revisit Davis's arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction." *Id.* at 658.

(4) <u>A gross disparity exists between the sentence Hardy received and the sentence he would receive today.</u>

At sentencing, Hardy's agreed-to sentence of 180 months fell in the lower middle of his guideline range of 168 to 210 months imprisonment. No longer considered a career offender under the current law, Hardy, if sentenced today would have a guideline range of 121 to 151 months imprisonment.  This is a gross disparity; if Hardy received a sentence in the approximate mid-point of his guidelines today, that would be 135 months – or a 45-month sentencing disparity. Hardy's sentence is almost 4 years longer than that of a similarly situated defendant sentenced today. Hardy points to cases from this district finding that a similar, or even less significant, disparity supports a sentence reduction. Dkt. 77 at 10. Because Hardy has served more than 10 years of his sentence and a gross disparity exists between the sentence he is serving and the sentence he would receive today, Hardy has met each element of § 1B1.12(b)(6) and has shown that an extraordinary and compelling reason for a sentence reduction exists.

(5) <u>Hardy plead guilty under Rule 11(c)(1)(C).</u>

The court has also considered that Hardy plead guilty pursuant to Rule 11(c)(1)(C), but that does not bar relief under 18 U.S.C. § 3582 in this instance. Hardy's Plea Agreement called for a sentence of 180 months imprisonment, the sentence the court imposed. The government

emphasizes that Hardy agreed to his sentence, and that the Plea Agreement benefitted him by reflecting his acceptance of responsibility, dismissing certain counts against him, and binding the court to impose a 180-month sentence. Of course, while this agreed sentence fell within his guideline range at the time, it exceeds the highest end of the guideline range today by 29 months. Courts in this district have found that a significant guidelines disparity range can be an extraordinary and compelling reason in a compassionate release motion even where the defendant plead guilty under Rule 11(c)(1)(C). In *United States v. Ewing*, the court found that a guidelines disparity range of 65 months was an "extraordinary and compelling reason," noting that "plea agreements are reached in the shadow of the advisory Sentencing Guidelines, which serve as the baseline for all sentencing decisions." No. CR RDB-18-0142, 2023 WL 2185785, at *4 (D. Md. Feb. 23, 2023) (collecting cases).

Unquestionably, changes to the guidelines range move the starting line for negotiations and influence how the defendant weighs the risk of deciding whether to plead guilty. In *United States v. Barbour*, Judge Dillon in this district found a significant guideline disparity was an "extraordinary and compelling reason," even specifically considering that the defendant plead guilty under Rule 11(c)(1)(C). 688 F. Supp.3d 335, 343 (W.D. Va. 2023); *see also United States v. Jimenez*, No. 5:09-CR-00032-MFU-1, 2023 WL 3309878, at *8 (W.D. Va. May 8, 2023) (granting motion to reduce sentence despite Rule 11(c)(1)(C) plea). In *Barbour* the court reasoned that, even though a guilty plea under Rule 11(c)(1)(C) provides a benefit to the defendant based on the sentencing range faced at the time, "the potential sentencing *exposure*" under the guidelines is "very different then and now." *Id.* In *Hughes v. United States*, the

Supreme Court held that a defendant may still seek relief under §3583(c)(2)[4], even if he entered into a plea agreement specifying a particular sentence. 584 U.S. 675, 685 (2018). Here, of course, Hardy seeks compassionate release pursuant to 18 U.S.C § 3582(c)(1)(A); however, I find that the Court's reasoning, that the agreed-upon sentence was based on the Guidelines range at the time of the plea, applies to Hardy's situation as well. A "sentence imposed pursuant to a Type–C agreement [where the government and defendant agreed to a specific sentence] is 'based on' the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes*, 584 U.S. at 685.

### C. Section 3553(a) Factors

Having found an extraordinary and compelling reason for compassionate release, the court then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether to exercise its discretion to reduce the defendant's sentence. *See Dillon*, 560 U.S. at 826–27; *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, provide just punishment, protect the public from further crimes of the defendant, and provide defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the applicable Guidelines range; (5) any pertinent Sentencing Commission policy statements; and (6) the need to avoid unwarranted sentence disparities among similarly situated defendants. Additionally, while rehabilitation alone "shall not be considered an extraordinary

---

[4] 18 USC § 3582(c)(2) applies to a "defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)."

and compelling reason" for a sentence modification, 28 U.S.C. § 994(t), a district court must consider rehabilitation efforts as part of its determination of whether to grant a sentence reduction. *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019).

"District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." *Davis*, 99 F. at 659 citing *United States v. High,* 997 F.3d 181, 189 (4th Cir. 2021). The reasoning must only "set forth enough to satisfy the appellate court that [the sentencing judge] has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." *Chavez-Meza v. United States*, 585 U.S. 109, 113 (2018). However, in a more complex case, more explanation may be necessary. *Id.*

Hardy advances his rehabilitation efforts during his incarceration, specifically working toward a GED, working within the BOP, and taking classes, including nonresidential drug education. Dkt. 69-2. Hardy states that he has "completed numerous programs" while incarcerated, listing "Seven Habits on the Inside, Victim Impact, Psych Self, Study," and is currently enrolled in an advanced GED class, as well as a welding class. He reports that he has been taking classes to obtain a CDL upon release. Dkt. 77. Hardy acknowledges that he has had some infractions while in the BOP but points out that, he has had no disciplinary infractions since 2021, and in the last five years his only infraction was refusing to obey an order. He discusses his difficult childhood, including his mother's traumatic death, and never receiving effective mental health treatment, all as described in the PSR. Hardy characterizes his drug dealing as being "consistent with someone who sold drugs to support his own use" and notes that the "amount of drugs at issue in this case was small." Dkt. 69. He points out that, if sentenced today, the average length of a sentence, according to JSIN, for defendants with similar records

and similar criminal conduct is 87 months,[5] less than half of the imposed sentence of 180 months.

In contrast, the government emphasizes the seriousness of the offense, and argues that Hardy "already received the benefit of graduated sanctions" when he pleaded down a 2006 charge of malicious wounding. Dkt. 66, 76. The government also emphasizes Hardy's prior criminal history, pointing out that he engaged in the offense conduct "after an extensive criminal history and while on probation for three felonies." *Id.*

Hardy's rehabilitation efforts in prison generally favor a reduction in sentence, but his disciplinary record, including two occasions of possessing drugs/alcohol, although not recent infractions, causes some concern. While the underlying offense is serious, overall the court finds that the § 3553(a) factors together support a reduction in sentence. Looking at the nature and circumstances of the offense, Hardy negotiated three significant drug and firearm transactions over the course of several weeks, where he arranged with a confidential source to sell an "8-ball" of cocaine base, as well as a firearm on each occasion. PSR ¶¶ 3–5. Ultimately, the court held Hardy responsible for 4.15 grams of cocaine and three firearms, including a firearm with a removed or obliterated serial number, and possessing a firearm in connection with the felony drug offenses. PSR ¶ 7.

Hardy's PSR shows no history of convictions for violent crimes, but multiple drug convictions, the felony eluding police conviction, and several misdemeanors.[6] Hardy's first drug conviction, in 2008 at age 22, was three counts of selling cocaine, for which he received 5 years

---

[5] Hardy relied upon a base offense level of 26 and a criminal history category of IV for this JSIN data which does not match the court's determined guideline calculation of the base offense level.

[6] Hardy was originally charged with malicious wounding in November 2004, but pled to a misdemeanor of contributing to the delinquency of a minor. PSR ¶ 27.

imprisonment with 4 years suspended, on each count, consecutive. Dkt. 31, ¶ 32. Hardy began probation in July 2011, after serving 3 years imprisonment. *Id*. He complied with supervision until submitting the first of several positive tests for marijuana in March 2012 and subsequently had two convictions of possession of marijuana in 2013. PSR ¶¶ 33, 35. As the government points out, Hardy committed the instant offense while on probation for three counts of selling cocaine in 2008. In his motion, Hardy also states that, if released, he will reside with his aunt, with whom he maintains a stable and productive relationship. Dkt. 54.

Hardy has served over 11 years of his 15-year sentence, when, if sentenced today, he would face a lesser sentence. Hardy's binding Rule 11(c)(1)(C) plea does give pause. However, in comparing the guideline ranges, as it must, the court concludes a near zero likelihood of Hardy agreeing to a plea of 180 months imprisonment, had the guidelines range been 121-151 months as it is today. Thus, the decrease in the guidelines range weighs in favor of a sentence reduction.

The Sentencing Guidelines specify that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Considering these factors, the fact that the offense involved the sale of both drugs and firearms while on probation for another drug offense, weighs against compassionate release. However, other factors indicate compassionate release, including that Hardy's criminal history contains no violent criminal convictions, and that he has served over 10 years of his sentence with only a few disciplinary infractions, none of them violent, with the most recent infraction "refusing to obey an order" occurring over four years ago, in July 2021. Dkt. 66-1. Hardy has a stable place to live with his aunt upon release. The court finds that Hardy's release after completing more than a ten-year sentence, followed by

14

three years of supervised release will not pose a significant threat to the safety of any person or the public.

After considering the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted and will reduce Hardy's sentence to time served. Even this reduced sentence is near the top end of the guideline range applicable were he sentenced today. A sentence of time served is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct, both to Hardy and to others.

### III.    Conclusion

The court will grant Hardy's motion for compassionate release and reduce his sentence to time served, followed by three years of supervised release with the same conditions as imposed at his sentencing in 2014. The court will allow a brief stay of the effective date of its order for up to seven days to ensure an orderly release from custody. An appropriate order will be entered.

Entered:  September 10, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge